Robert L. Liebross (RL8766)
LAW OFFICE OF ROBERT L. LIEBROSS
Attorney for Plaintiff
25927 148th Drive
Rosedale  NY 11422
212-566-2151
rliebross@liebrosslaw.com

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

STEVEN A. MASNJAK, Executor of the Estate of Gaye Masnjak, and individually as the beneficiary of the life insurance coverage of Gaye Masnjak, deceased, under the Scholastic Employee Welfare Benefit Plan; STEVE MASNJAK, ALEXIS MASNJAK, and TAYLOR MASNJAK, beneficiaries of the life insurance coverage of Gaye Masnjak, deceased, under the Scholastic Employee Welfare Benefit Plan,

 *Plaintiffs*,

*vs*.        **Civil Action No.**  26-cv-6847

SCHOLASTIC, INC**.**,

 *Defendant*.

---

## COMPLAINT FOR DECLARATORY AND OTHER APPROPRIATE EQUITABLE RELIEF UNDER ERISA

---

## PRELIMINARY STATEMENT

1. This is an action brought by the husband and children of the late Gaye Masnjak, who are her beneficiaries of her life insurance coverage under Scholastic Inc.'s Benefit Plan-Group Insurance (Welfare Plan or Plan), an employee welfare

benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1). Mrs. Masnjak was a former Vice President of Scholastic, Inc. (the Scholastic Corporation, or Scholastic), reputed to be the world's largest publisher and distributor of children's books.

2.      The action is brought against Scholastic in its capacity as named fiduciary and plan administrator of the Welfare Plan, and arises under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).  The Court has jurisdiction pursuant to ERISA section 502(e)(1), 29 U.S.C. §1132(e)(1).

3.      Mrs. Masnjak was a participant in the Benefit Plan-Group Insurance, which includes various benefit plan components, including life insurance coverage and disability benefits.

4.      Scholastic had purchased an insurance policy from CIGNA Life Insurance Company of New York to provide life insurance benefits to company employees.  That policy is an instrument governing the life insurance component of the Welfare Plan.  Scholastic, the Plan Administrator, files an annual report of the Welfare Plan, and all its components, with the Internal Revenue Service and the Department of Labor on Form 5500.  The Form 5500 for the Welfare Plan for the 2024 Plan Year (calendar year) is publicly available on the Department of Labor's website.

5.      By 2023, Gaye Masnjak was a 29 year employee of Scholastic who had risen to the position of Vice President in charge of inside sales.  As a Vice President in 2023, she had approximately $714,000 of life insurance coverage under the Plan.

6.      When she became sick from pancreatic cancer in 2023, she took leave from Scholastic at the end of September, 2023, under the Family and Medical Leave Act.  Her Welfare Plan coverages continued during that FMLA leave.

7.      In November, 2023, the Disability Benefits Claim Administrator under the Plan determined she was approved for short term disability benefits. Her Welfare Plan coverages (except for the Dependant Care FSA) continued during the time she was approved for short disability benefits.

8.      In April, 2024, Scholastic's Benefits Center notified her that she was approved for long term disability benefits.  Her Welfare Plan life insurance coverages continued during the period she was approved for long term disability benefits.  In the section of the CIGNA Group Life Insurance Certificate dealing with the continuation of insurance while "Disabled," the Certificate then provided:

> In lieu of continuing coverage under this provision, the Conversion Privilege for Life Insurance is available to you on the date continued insurance ends, or at any time while Life Insurance Benefits are continued under this option.

3

9.      The 75 page document entitled "A Guide to the Scholastic Welfare Benefit Plan for Eligible Active Employees and Pre-65 Retirees," stated by Scholastic to be "part" of the Welfare Plan's Summary Plan Description, stated in the middle of the section on Page 33 addressing benefit options while approved for long term disability benefits under the Plan:

> When you become disabled, you will receive information on the benefit options available to you, and their costs.

10.      In April, 2024, Scholastic sent Gaye Masnjak a letter telling her what her benefit options were, and their costs. Although she had the option of converting her group coverage into an individual policy, that information was not included in the letter.  No mention was made of her option to convert her group coverage into an individual policy, or the cost of doing so.

11.      When she became cancer free in the fall of 2024 and able to return to work, she lost her eligibility for long term disability benefits.  She also lost her right to convert that $714,000 coverage into an individual policy.

12.      When Gaye Masnjak returned to work in November, 2024, Scholastic demoted her into a lower level position, making her ineligible for life insurance coverage as a Vice President.

13.      With respect to when they demoted her and reduced her coverage, the

4

CIGNA life insurance certificate covering Vice Presidents stated:

> You must be notified within 31 days, before or after an event that results in termination or reduction of your group life insurance. . . . Notice, for purposes of this section, means written notice presented to you by the Policyholder [Scholastic] or mailed to your last known address as reported by the Policyholder.

14.   The written notice was required to state when the prior group coverage will expire; when the right of conversion will expire; the procedure to follow in order to convert the group policy into an individual policy; and the amount of premium required to complete conversion.

15.   Scholastic never provided that notice.  No such notice was ever given. Scholastic never provided her with a copy of the CIGNA Certificate of Group Coverage that applied to her in her demoted position.  Scholastic did not tell her that in her new position, her life insurance coverage also was being reduced to a Basic Benefit of $150,000 (1 times her salary), and with her voluntary coverage of 1 times her salary, only an additional $150,000, for a total coverage of $300,000.

16.   Had Scholastic provided Gaye Masnjak with actual notice that her life insurance coverage had just been reduced from $714,000 to $300,000, and also provided her with the CIGNA certificate informing her that she could now increase her voluntary coverage from 1x her salary of $150,000 to 3x her salary (for an increase of $300,000) as a guaranteed issue under the policy, thereby

recovering $300,000 of the $414,000 she lost in coverage, she would immediately have increased her voluntary coverage to $450,000.  She lost that right because Scholastic failed to inform her that her coverage had been reduced and failed to provide her with a copy of the CIGNA group certificate applicable to her new position.

17.     In December, 2024, two weeks after she returned to work, Scholastic sent her written confirmation of her prior coverage.  Had Scholastic timely provided  Gaye Masnjak with a copy of the CIGNA Certificate that applied to her in her demoted position, she could have elected  voluntary coverage up to 3 times her annual compensation, or up to $450,000, as a guaranteed issue.

18.    She continued to believe she was covered for that approximately $714,000 in life insurance, providing her three children and her husband with a written breakdown of how that insurance benefit would be divided among them should the pancreatic cancer return and take her.

19.    On information and belief, effective January 1, 2025, Scholastic switched life insurance carriers from CIGNA to First UNUM Life Insurance. After the switch, Scholastic continued to charge her for voluntary coverage.  On information and belief, Mrs. Masnjak had the same life insurance  benefit coverage after the January 1st switch as she had immediately before January 1st.

20.    After the switch, on information and belief, Gaye Masnjak would have been eligible for life insurance coverage under the UNUM group policy even if she had previously converted her coverage under the CIGNA group policy into an individual policy of approximately $714,000.

21.    The cancer returned in early 2025, and Gaye Masnjak had to stop working as of April 1, 2025.  She passed away on June 6, 2025.

22.    UNUM paid her beneficiaries a life insurance benefit of $300,000, consisting of 1 times her salary of $150,000, and an additional voluntary benefit of 1 time her salary of $150,000.

23.    Under ERISA section 404(a)(1)(D), 29 U.S.C. 1104(a)(1)(D), Scholastic had a fiduciary duty to act in accordance with the documents and instruments governing the Life Insurance Component of the Welfare Plan.

24.    Under ERISA section 404(a)(1)(B), 29 U.S.C. 1104(a)(1)(B), Scholastic had a fiduciary duty not to mislead Gaye Masnjak with respect to her option to convert her life insurance coverage under the group policy into an individual policy when  she became disabled.

25.    Her life insurance beneficiaries lost the life insurance benefits that she was relying on to provide for them after she was gone.   They also lost the full approximately $714,000 in a private policy that she could have converted her

CIGNA coverage into and still have remained eligible for the life insurance benefits under the UNUM policy that her beneficiaries received.

26.     Her life insurance beneficiaries seek appropriate equitable relief, authorized by ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3), for Scholastic's failure to comply with its fiduciary duties under ERISA section 404(a)(1), 29 U.S.C. §1104(a)(1).

27.     "[F]raud has a broader meaning in equity (than at law) and intention to defraud or misrepresent is not a necessary element.  Fraud in a court of equity properly includes all acts, omissions and concealments which involve a breach of a legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another." *Sullivan-Mestecky v. Verizon Communications, Inc.*, 961 F.3d 91, 100-01 (2d Cir. 2020).  The Court there "recognized a plaintiff's non-procurement of alternative coverage as a loss resulting from a fiduciary's material misrepresentation of the plaintiff's extent of or eligibility for coverage."  *Sullivan-Mestecky*, at 103 n.44.  The Court there also recognized promissory estoppel, surcharge and reformation could be appropriate equitable remedies for a fiduciary's breach of duty. *Sullivan-Mestecky*, at 100-104.

28.     The beneficiaries seek to have the Court order Scholastic to pay the amount of benefits that the beneficiaries would have received had Gaye Masnjak

been given timely adequate and legally required written notice of her right to convert her coverage as a Vice President into an individual policy, which would have guaranteed their receipt of those funds, and not misled into inaction.

29.    In January, 2026, Scholastic was asked in writing to provide a copy of the CIGNA life insurance policy under which Gaye Masnjak had been insured as a Vice President, a document that a beneficiary had a legal right to receive under ERISA section 104(b)(4), 29 U.S.C. § 1024(b)(4).  Scholastic did not respond to that request when it provided some of the other requested documents.

30.    When Gaye Masnjak's beneficiaries repeated the request, they were told that Scholastic had been "working on it."  Not until August 10, 2026 did Scholastic provide a copy of the CIGNA Life Insurance policy that applied to Gaye Masnjak while she was a Vice President.

31.    The Court has the discretion to award a penalty of up to $110/a day for each day past 30 that Scholastic failed to provide the document, pursuant to ERISA section 502(c), 29 U.S.C. § 1132(c).  That 30 day period ran out on February 5, 2026. The beneficiaries seek the maximum award authorized by law for Scholastic's failure, through August 10, 2026, to provide a copy.

32.    The beneficiaries also seek an award of attorney's fees and costs, authorized under ERISA section 502(g)(1), 29 U.S.C. § 1132(g)(1).

## JURISDICTION AND VENUE

33.    This Court has subject matter jurisdiction under ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).

34.    Venue is proper in this district, under ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2).  Defendant Scholastic, Inc. is the Plan Sponsor, within the meaning of ERISA section 3(16)(B), 29 U.S.C. § 1002 (16)(B),  and the Administrator, within the meaning of ERISA section 3(16)(A), 29 U.S.C. § 1002(16)(A), of the Scholastic, Inc. Welfare Benefit Plan (Welfare Plan or Plan), an employee welfare benefit plan within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1).

35.    Scholastic Inc. is headquartered in this district at 557 Broadway. New York, NY 10017.  At all relevant times, Scholastic administered the Life Insurance component of its Welfare Plan in this district.

36.    At all relevant times, CIGNA Life Insurance Company of New York, whose office at all relevant times was in this district, either at 140 East 45th Street, New York, NY 10017-3144, or after becoming part of New York Life Group Insurance Company of New York, at 51 Madison Ave., New York, NY 10010, issued an employee group policy of life insurance to Scholastic Inc. in this district. At all relevant times, that policy, Policy No. FLY-980010 (Policy), was in force

and covered, among others, Vice-President or higher level Executives of Scholastic. Inc.  At all relevant times, the policy covered Gaye Masnjak.

37.    At all relevant times, Scholastic was responsible under the Welfare Plan and under the CIGNA Policy (Policy) for issuing timely, full, complete and accurate notices to Vice Presidents and other Executives covered under the Policy, of the  insured's right under the Policy to convert their coverage under the Policy into an individual policy.  Scholastic's failures to do so occurred in this district.

38.    Scholastic also was responsible for issuing a timely, full, complete and accurate Summary Plan Description, within the meaning of ERISA section 104(b), 29 U.S.C. § 1024(b), of the Welfare Plan to Gaye Masnjak while she was employed by Scholastic and while she was covered under Policy.   Scholastic's failure to do so occurred in this district.

## THE PARTIES

39.    At all relevant times, Plaintiff Steven A. Masnjak was married to Gaye Masnjak, who was  employed by Scholastic, Inc.,  from 1994 through June 6, 2025, when she passed away.  At all relevant times in 2023 and 2024, she was employed by Scholastic as a Vice President and covered under the Policy as a Vice President.  Steven A. Masnjak is a beneficiary of Gaye Masnjak under the Policy

and under the Welfare Plan, was listed by Scholastic as a beneficiary under the Policy and under the Welfare Plan, and is the Executor of her estate.   He is a beneficiary, within the meaning of ERISA section 3(8), 29 U.S.C. § 1002(8).

40.    Steve Masnjak is the son of Gaye and Steven A. Masnjak and is a beneficiary of hers under the Policy and under the Welfare Plan, and was listed by Scholastic as a beneficiary under the Policy and under the Welfare Plan.  He is a beneficiary within the meaning of  ERISA section 3(8), 29 U.S.C. § 1002 (8).

41.    Alexis Masnjak is the daughter of Gaye and Steven A. Masnjak and is a beneficiary of hers under the Policy and under the Welfare Plan, and was listed by Scholastic as a beneficiary under the Policy and under the Welfare Plan.  She is a beneficiary within the meaning of  ERISA section 3(8), 29 U.S.C. § 1002 (8).

42.    Taylor Masnjak is the daughter of Gaye and Steven A. Masnjak and is a beneficiary of hers under the Policy and under the Welfare Plan, and was listed by Scholastic as a beneficiary under the Policy and under the Welfare Plan.  She is a beneficiary within the meaning of  ERISA section 3(8), 29 U.S.C. § 1002 (8).

43.    Scholastic, Inc. (Scholastic Corporation, or Scholastic) is the plan sponsor and administrator of the Scholastic, Inc. employee welfare benefit plan, within the meaning of ERISA section 3(16), 29 U.S.C. § 1002(16).

44.    Page 1 of the 2024 Scholastic, Inc. employee welfare benefit plan

Form 5500, filed under penalties of perjury with the U.S. Department of Labor and the Internal Revenue Service, states that the name of that Plan administered by Scholastic, Inc. is "Benefit Plan-Group Insurance."

45.    With respect to life insurance benefits under the welfare plan, Scholastic executed the Application for Group Insurance with CIGNA Life Insurance Company of New York.

46.    In what Scholastic labeled a "summary  plan description" of the Plan, Scholastic stated that it undertook the duty to administer the plan.

47.    The CIGNA Certificate applicable to coverage of Vice Presidents under the CIGNA Group Policy provided that insureds could convert their coverage under the group policy into an individual policy under certain circumstances.  The Certificate stated, to the insureds:

> **You must be notified, within 31 days, before or after an event that results in termination or reduction in your group life insurance . . . Notice, for purposes of this section, means written notice presented to you by the Policyholder or mailed to your last known address as reported by the Policyholder.**  [emphasis added]

48.    In what it labeled as part of the summary plan description of the welfare plan, Scholastic stated that if you become disabled while working at Scholastic and continue to be disabled under the Plan's long term disability, "you will receive information on the benefit options available to you and their costs."

The benefit options were all benefit options under the Welfare Plan, except for dependant day care.

49.    Scholastic is responsible under the Welfare Plan for providing written notices to participants when they are eligible to convert their group coverage into an individual policy; when that eligibility starts and when it stops, and the cost of converting that coverage into an individual policy.

50.    Scholastic provided written information to Gaye Masnjak regarding her continued eligibility for benefits under the Welfare Plan when she became disabled and entitled to long term disability benefits under the Plan and when Scholastic issued a list of benefit options to welfare plan participants during the annual election season for the welfare plan.

51.    Scholastic is the named fiduciary, within the meaning of ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), of its employee welfare benefit plan. Scholastic exercises discretionary authority or discretionary control respecting management of the welfare plan, and is a fiduciary, within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), of the Plan.

## CONTINUED ALLEGATIONS  OF FACT

52.     Gaye Masnjak was born in Belvidere, Illinois on September 5, 1961. She was employed for approximately thirty years by the Scholastic Corporation. At some point prior to early 2023, she had risen to the position of Vice President of Inside Sales.

53.     As a Vice-President at Scholastic, Gaye Masnjak was a participant in the Scholastic Welfare Plan.  The Plan provided various benefits of employment to employees eligible to participate in the plan and eligible for the various benefit coverages provided by the Plan.  Among the various benefits provided by the Plan was life insurance coverage.

Life Insurance Coverage for Vice-Presidents under the CIGNA policy

54.     Scholastic executed an application for group life insurance coverage with the CIGNA Life Insurance Company of New York (CIGNA).   Pursuant to that application, CIGNA issued Group Policy FLY-980010, of group employee life insurance coverage, to Scholastic Corporation.

55.     The Group Life Insurance Certificate issued by CIGNA to Scholastic that covered Gaye Masnjak at all relevant times under Policy Number FLY-980010 stated that the Policy effective date was January 1, 2013 and that the

Certificate effective date was June 1, 2021.

56.    Right above the signature of William J. Smith President of The

CIGNA Life Insurance Company of New York, the Certificate stated:

*Nothing in this group policy will invalidate or impair the rights granted to holders of any certificates issued under this policy, under the terms of the certificate, or by law.*

The Certificate That Covered Company Vice Presidents

57.    In the Schedule of Benefits on p. 1, the Certificate stated:

**Class Definition**

You are eligible for insurance if you are a member of the class defined

below:

> All active Full-Time Vice Presidents or higher level Executives of the Employer regularly working a minimum of 30 hours per week in the United States who are citizens or permanent resident aliens of the United States.

58.    At all relevant times, Gaye Masnjak was eligible for life insurance

under the terms of Policy Number FLY-980010 as a Scholastic Vice President

under the Class Definition set forth in that Certificate, or eligible to convert her

coverage as a Vice -President under that group policy into an individual policy.

59.    The Certificate contained a benefit formula. The Life Insurance Basic

16

Benefit was "3 times your annual compensation."  The maximum Basic Benefit was "the lesser of 3 times Annual Compensation or $500,000.

60.    As Gaye Masnjak's Annual Compensation was greater than one-third of $500,000, her maximum Basic Benefit was $500,000.

61.    In addition to the Basic Benefit, the Certificate provided for a Voluntary Benefit, of "1,2,3,4 or 5 times your Annual Compensation."  The Voluntary Benefit Maximum Benefit was "the lesser of 5 times Annual Compensation or $1,000,000.  She had elected a Voluntary Benefit (employee paid) of life insurance coverage of 1 time her salary, which in 2023 was approximately $214,000.

62.    Starting at Page 21 of the Certificate is a section labeled "Supplemental Information for Benefit Plan-Group Insurance required by the Employee Retirement Income Security Act of 1974."   The Certificate and the Supplemental Information, appearing on pages 21-25 of the Certificate document, states that the Certificate and the "following Supplemental Information" makes up the Summary Plan Description as required by ERISA.

63.    That Supplemental Information states that the Plan Administrator is Scholastic Corporation.   That Supplemental Information states: "The Insurance Plan is administered directly by the Plan Administrator with benefits provided, in

17

accordance with the provision of the group insurance contract, FLY-980010, issued by CIGNA LIFE INSURANCE COMPANY OF NEW YORK."

64.    That Certificate states that the Plan Administrator has authority to control and manage the operation and administration of the Plan.

<u>Gaye Masnjak is diagnosed with Stage 2/3 Pancreatic Cancer in 2023</u>

65.    At some point in early to mid-2023, Gaye Masnjak was diagnosed with stage 2/3 pancreatic cancer.  She tried to keep working while undergoing treatment, but had to stop working because of her illness by the end of September, 2023.  She took a voluntary leave of absence under the Family and Medical Leave Act.  The people she worked with at Scholastic were a close-knit group, and knew she was suffering from pancreatic cancer.

66.    By letter dated November 4, 2023, from New York Life Insurance Company,  Mrs. Masnjak was informed she had been approved for short term disability benefits back to September 27, 2023.  Subsequent letters from New York Life approved further short term disability benefits.   By letter dated April 19, 2024, Gaye Masnjak was informed that she had been approved for long term disability benefits under the welfare plan, effective March 25, 2024.

67.    Gaye Masnjak returned to work at Scholastic on Monday, November

18, 2024.  After she returned to work, she provided her husband and her three grown children with a written allocation of how the life insurance money was to be divided between them.  Her life insurance beneficiary statements recorded by Scholastic also set forth the allocation percentages.

That life insurance coverage was very important to Gaye Masnjak, for those funds would help provide her family to maintain their homes and the animals they cared for after she was gone.

### Conversion Rights Under the CIGNA Policy

68.    The Scholastic Life Insurance Certificate contained a section on p. 12-13 that set forth the circumstances under which an insured had the right to convert their group coverage into an individual policy, and Scholastic's obligation to provide timely written notice to insureds of that right.

**The circumstances listed there did not include** an insured's right to convert group coverage into an individual policy when the insured became Disabled while insured and was receiving short or long term disability benefits under the Plan.

69.    **That right to convert while Disabled and receiving short or long term disability benefits under the Plan was set forth in a single sentence**

19

**buried in the text on p. 8 of the Certificate**.  See par. 8, *supra*.

The text on p. 8 was referring to an insured's right to continue their existing life insurance coverage if they became Disabled and premiums were paid. The sentence on page 8 set forth the insured's option to convert instead of continuing the existing group coverage.

70.    The text on p. 13 did not cross-reference p. 8, or refer to it in any way.

71.    Scholastic had expressly stated on page 33 of the 75 Page document that it labeled to be part of the Summary Plan Description for the Welfare Plan that whenever a participant became eligible to receive long term disability benefits under the Plan, the participant "will receive information on the benefit options available to you, and their costs."

72.    In its letters to Gaye Masnjak dated April 23, 2024 and April 29, 2024, Scholastic stated:

> Since you have been approved for LTD, you are eligible (if you choose to do so) to continue your Scholastic medical , dental and vision, etc. at the active employee rate for up to 24 months (March 24, 2026).

73.    In that letter, Scholastic listed the monthly Supplemental Life premium of $141.25 she was responsible for paying for the Voluntary Coverage of 1 time her salary as a Vice President..

20

74.     However, Scholastic failed to provide complete and accurate information in that letter about Gaye Masnjak's eligibility to convert her group life coverage into an individual policy, since she had been approved for LTD.

75.     In those letters, Scholastic was acting in its fiduciary capacity as plan administrator and engaging in the fiduciary function of communicating with plan participants about their rights as a participant approved for LTD benefits under the Welfare Plan.

76.     However, when Scholastic provided Gaye Masnjak with written notice in April, 2024, that she had been approved for long term disability benefits, and of her benefit options and her cost of continuing them, **it failed to inform her** that she then had a right to convert her existing group coverage into an individual policy, failed to inform her how long this right to convert would last, and failed to inform her of how much it would cost her to convert her coverage into an individual policy.

77.     When Gaye Masnjak was diagnosed as being "cancer-free" in or about November, 2024, she was able to return to work.  However, Scholastic had put someone else in her Vice-President's position.

78.     By memo dated November 11, 2024, Scholastic wrote Gaye Masnjak that effective November 18, 2024, she was scheduled to return to work as

21

Director, Special Projects. That position was a demotion from her position as a Vice-President.

79. Scholastic also reduced her base salary to $150,000 on an annualized basis.

80. In that new position, Gaye Masnjak also was no longer covered for life insurance as a company Vice-President.

81. On information and belief, the life insurance benefit formula that applied to her was set forth in a different CIGNA Certificate. The Basic Benefit in that other Certificate was "1 times your annual compensation."

82. In that other Certificate, a Voluntary Benefit was "1,2,3,4 or 5 times your Annual Compensation." The Guaranteed Issue Amount of the Voluntary Benefit was "the lesser of 3 times Annual Compensation, or $500,000." The Maximum Voluntary Benefit was "the lesser of 5 times Annual Compensation or $1,000.000."

83. However, Scholastic never gave Gaye Masnjak a Certificate of Coverage from CIGNA which described the eligible class of employees she had been demoted into, after she returned to work in 2024. That Certificate would have informed her that the amount of life insurance coverage she was eligible for under the Group Policy in her new job was less than the amount she was eligible

for in her position as a Vice President.

84. On information and belief, at some point after Gaye Masnjak returned to work in November, 2024, and after December 4, 2024, the print date on a letter it sent her confirming her open season life insurance coverage of $500,000 with additional voluntary coverage of $214,000, Scholastic simply changed its records and recorded her life insurance coverage because of a change in class as 1x her salary of $150,000, and a Voluntary benefit of 1x her salary ($ 150,000), for a total coverage of $300,000, without telling her.

85. Scholastic did not inform Gaye Masnjak that her life insurance coverage had been reduced.

86. The CIGNA Group Life Insurance Certificate that covered her as a Vice President also provided, in the section entitled "Conversion Privilege for Life Insurance, on page 12:

> . . . You may also apply if your life insurance benefit is reduced due to a change in age, class or the Policy. . . . Conversion which becomes available  due to a reduction in insurance will be permitted up to the amount of the reduction. [emphasis added].

87. The amount of the reduction of Gaye Masnjak's life insurance coverage was approximately $414,000.

88. Prior to returning and being demoted, Gaye Masnjak had made her

elections for benefit coverage in 2025 under the "open season" for elections under the company welfare benefit plan.  She continued her voluntary election of life insurance coverage at 1x her then salary of $214,000, at the cost that Scholastic set forth for her voluntary coverage at her salary of $214,000.

89.    Further, after demoting her into a job that no longer provided her with a life insurance Basic Benefit of 3 times her salary, to a maximum of $500,000, Scholastic sent her a letter dated December 4, 2024, *confirming* her open season benefit elections, including voluntary coverage at her Vice President's salary of $214,000.  That letter expressly stated that "if your pay changed *after open enrollment ended, the employee contribution rates may be different."*  Her pay changed before open enrollment ended.

90.    In December, 2024, Scholastic confirmed in writing to Gaye Masnjak her life insurance coverage of $500,000 under the Plan and her employee bi-weekly cost of $67.06 for Supplemental Employee Life at 1x pay of $214,000 for that coverage in 2025.

91.    Scholastic was acting in its fiduciary capacity in providing information to Gaye Masnjak of her life insurance coverage in 2025 under the Plan.

92.    When she returned to work on November 18, 2025, had Scholastic

informed Gaye Masnjak that her life insurance coverage had been reduced and informed her that she could have elected additional voluntary insurance coverage up to the Guaranteed Issue Amount, which was"the lesser of 3 times annual compensation, or $500,000," she would have promptly increased her voluntary coverage to 3x her annual compensation of $150,000, to a total of $450,000.

93.    Gaye Masnjak was deprived of that opportunity by Scholastic's failure to inform her of that right.

### Scholastic's Obligations to Provide Written Notice of the Right to Convert Coverage under the Group Life Insurance Policy into an Individual Policy

94.    As represented in the CIGNA Certificate of Coverage that applied to Gaye Masnjak as a Scholastic Vice-President,  the CIGNA Insurance Policy had expressly provided: "You must be notified within 31 days before or after an event that results in termination, or reduction in your group life insurance, . . .  If such notice is not given within 105 days after the event, the time allowed for the exercise of the conversion privilege expires at the end of 105 days.  Notice, for purposes of this section, means written notice presented to you by the Policyholder or mailed to your last known address as reported by the Policyholder."  Scholastic was the Policyholder.

95.    Scholastic never provided that written notice. When the policy

25

requires written notice be provided, that means something beyond what was previously provided. ". . . [W]e construe the plain meaning of "written notice" to require something in writing above and beyond what was previously received." *Canada Life Assurance Society v. Estate of Leibowitz*, 185 F.3d 231, 238 (4th Cir. 1999). That Court also stated: "The SPD cannot constitute written notice of the right of conversion because the SPD is routinely given to every person when her coverage begins." *Id*. The 4th Circuit also stated: "We rule that adequate written notice here must be in writing and explicitly include: (1) when the group coverage will expire, (2) when the right of conversion will expire, (3) the procedure to follow in order to convert the group policy into an individual policy, and (4) the amount of premium required to complete conversion." *Id.*

96.    Effective January 1, 2025, Scholastic switched life insurance carriers from the prior CIGNA insurer (which by then had been taken over by New York Life Group Insurance Company of New York) to UNUM.

97.    When her cancer returned in early 2025, Gaye Masnjak stopped working, as of April 1, 2025. She passed away on June 12, 2025. Shortly thereafter, UNUM paid the Masnjak beneficiaries a total of $300,000 in life insurance benefits.

98.    After she had become disabled by her pancreatic cancer, Gaye

26

Masnjak knew she was likely to pass away sooner rather than later, and had wanted to protect the economic well being of her family with the life insurance coverage she had as a Vice President.

99.    At all relevant times, Gaye Masnjak had not converted her coverage as a Vice President under the CIGNA policy into a private policy of insurance during the time that she was eligible to do so because Scholastic never provided her with the clear, timely written notice of her eligibility to do so, that it was required to do under the terms of the welfare plan, in violation of its fiduciary duty.

100.   Because of Scholastic's failures, Gaye Masnjak's family beneficiaries lost life insurance benefits that she would have provided them had she converted her coverage under the CIGNA group policy into an individual policy, and had she elected additional voluntary coverage under the CIGNA policy when she was eligible to do so.

<u>The Summary Plan Description</u>

101.   With respect to informing its employees about their rights and obligations with respect to employee life insurance benefits, Scholastic prepared <u>two</u> separate documents and called each one a summary plan description with

respect to employee life insurance coverage.

<u>The First Document-the CIGNA Certificate of Coverage</u>

102.   First, Scholastic had Group Life Insurance Certificates from the CIGNA Life Insurance Company of New York, which stated that it "describes the benefits and basic provisions of your coverage" under Group Policy FLY-980010, that CIGNA had issued to Scholastic Corporation.

103.   Different certificates applies to different groups of employees.  The Certificate that applied to Gaye Masnjak in her position as a Scholastic Vice President stated that it applied if you are a member of the class of:

> All active, Full-time Vice President or higher level Executives of the Employer regularly working a minimum of 30 hours per week in the United states who are citizens or permanent resident aliens of the United States.

> On p. 1, the Certificate stated that the Policy's effective date was January 1, 2013 and that the Certificate's Effective Date was June 1, 2021.

104.   Pages 21-25 of the Certificate were entitled:

> **SUPPLEMENTAL INFORMATION for Benefit Plan-Group Insurance required by the Employee Retirement Income Security Act of 1974**

The Supplemental Information then stated:

> . . . The Certificate, along with the following Supplemental Information, makes up the Summary Plan Description required by ERISA.

28

The Second Document

105. The Second Document was a 75 page document that referred to all of the component benefit plans included within the Scholastic employee welfare benefit plan. Those benefit plans included the employee life insurance benefit.

106. That Document was Entitled: "A Guide to the Scholastic Welfare Benefit Plan for Eligible Active Employees and Pre-65 Retirees." It stated it was effective January 1, 2023. On the cover page, it stated in relevant part:

> This booklet does not constitute the full Summary Plan Description (SPD) for Scholastic's . . . life . . . insurance plans . . . . Read this document along with the vendor-prepared materials that are incorporated by reference into this booklet for plan details and the complete SPD.

Requests to Scholastic for Information

107. By letter dated December 26, 2025, from counsel, Gaye Masnjak's son, beneficiary Steve Masnjak (there identified as Steven Masnjak), by counsel, sent a written request to Scholastic by U.S. Priority Mail for documents that he had a legal right to receive, pursuant to ERISA section 104(b)(4), 29 U.S.C. § 1024(b)(4).

108. Scholastic responded by letter dated February 5, 2026, from its attorney, stating that Scholastic had received the request on January 5, 2026.

109. Among the documents requested were the life insurance policies

under which Gaye Masnjak had been insured while she was a Scholastic Vice President.  In relevant part, the letter stated:

Request for Documents

ERISA section 104(b)(4), 29 U.S.C. 1024(b)(4), provides, in relevant part:

> (4) The administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.
>
> Please provide me with a copy of each written instrument, within the meaning of ERISA section 402(a)(1), 29 U.S.C. § 1102(a)(1), of each employee life insurance plan that Ms. Masnjak was eligible to participate in during her employment with Scholastic since she first became a company Vice-President. and an executed copy  of all amendments to that written instrument to the present.

110.  Scholastic did not provide any CIGNA policy, and did not address the request for the insurance policy that insured Gaye Masnjak as a Vice President beyond stating that Gaye Masnjak became a Vice-President of Scholastic back in 1994, over thirty years ago (when she was 33).

111.  Scholastic did not provide a copy of the CIGNA policy in effect in 2023 and 2024.  Instead, it provided what it stated were copies of the Group Life Insurance Policy Certificates that applied to Gaye Masnjak in 2023, 2024, and 2025, and copies of the additional documents that it represented to be the Life Insurance Plan's Summary Plan Description.

30

112.   The December 26th letter also requested a copy of documents relevant to Gaye Masnjak's eligibility for life insurance benefits during her last ten years of employment.  The letter stated, in relevant part:

Please provide me with a complete copy of Ms. Masnjak's personnel file with Scholastic for the last ten years, through the present.  That file should set forth information relevant to her employment status and eligibility for benefits under any life insurance plan that applied to her.

113.   Scholastic responded that it did not have to provide those documents.

114.   By letter dated June 30, 2026, to Scholastic's attorney, sent by e-mail and U.S. mail, the plaintiff beneficiaries again requested the CIGNA and UNUM policies and relevant personnel documents.   With respect to the personnel documents, the letter stated:

Also, you did not provide me with a copy Gaye Masnjak's personnel file for her last ten years of employment.  She had worked for Scholastic for over **thirty** years.

I stated I was requesting that file because "That file should set forth information relevant to her employment status and eligibility for benefits under any life insurance plan that applied to her."

You did not provide that personnel file.  I have since learned that information relevant to eligibility for benefits is kept by Scholastic not in a folder labeled a personnel file, but in a folder labeled a benefit file, that Scholastic maintains plan by plan.

I had the wrong label but Scholastic knew what I was requesting–all information relevant to her eligibility for benefits under the Scholastic life insurance policies.

31

Please provide all of that information, no matter what the label of the file in which it is stored, including the insurance policies requested, by return mail. That will stop the penalty clock from continuing to run.

115. That letter of June 30, 2026, also set forth claims of Gaye Masnjak's beneficiaries to the additional approximately $714,000 in life insurance benefits that they would have received had Scholastic provided clear, timely and complete written notice to Gaye Masnjak of her option and right to convert her group coverage as a Vice President into a private policy, as well as her later right after she was demoted to convert that group coverage into a private policy.

116. On August 10, 2026, Scholastic finally provided a copy of the CIGNA insurance policy FLY-980010, with amendments adopted after that date. On information and belief, Scholastic did not provide all documents regarding Gaye Masnjak's eligibility for life insurance coverage from 2023 to the present, under which the Life Insurance component of the Welfare Plan had been operated or maintained.

117. Scholastic has not responded to the specific claims set forth in the June 30th letter.

## FIRST  CLAIM FOR RELIEF
**Breach of Fiduciary Duty**

ERISA section 404(a), 29 U.S.C. § 1104(a), as enforced through
ERISA section 502(a)(3), 29 U.S.C. §1132(a)(3).

118.   Paragraphs 1-117 are incorporated by reference as if fully set forth herein.

119.   ERISA section 404(a)(1), 29 U.S.C. § 1104(a)(1), requires a plan fiduciary to discharge its  duties with respect to a plan solely in the interest of plan participants and (A) for the exclusive purpose of providing benefits to participants; (B) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; © by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and (D) in accordance with the documents and instruments governing the plan insofar as the documents and instruments are consistent with Title I of ERISA.

120.   Scholastic failed to comply with its fiduciary duties by failing to act in accordance with the documents and instruments governing the Plan  in failing to provide Gaye Masnjak with timely, accurate, full and complete accurate

information about her right under the Welfare Plan to convert her life insurance coverage under the CIGNA group policy into an individual life insurance policy.

121. Scholastic failed to act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; by

(a)    misrepresenting her options with respect to benefit eligibility under the Welfare Plan when she became eligible to receive long term disability benefits; and specifically failing to alert her that she then had the option to convert her life insurance coverage under the CIGNA group policy into an individual policy of insurance;

(b)    failing to provide her with full, complete and accurate information about her right to convert her life insurance coverage as a Vice President under the CIGNA group  policy into an individual policy of insurance;

(c)    failing to provide her with full, complete and accurate information about her right to elect additional voluntary life insurance coverage under the CIGNA policy when she returned to work in November, 2024.

## SECOND CLAIM FOR RELIEF
ERISA section 502(a)(3), 29 U.S.C. 1132(a)(3)

Failure to Provide a Legally Adequate Summary Plan Description of the Life
Insurance Component of the Welfare Plan, in Violation of the Disclosure
Provisions of ERISA, 29 U.S.C. 102, 29 U.S.C. §1022, as enforced through
ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3)

122.   Paragraphs 1-121 are incorporated by reference as if fully set forth

herein.

123.   ERISA section 102, 29 U.S.C. § 1022, as enforced through Labor

Department regulation 2520.102-2(a), 29 C.F.R. § 2520.102-2(a), required the

CIGNA Certificate of Group Coverage applicable to Vice Presidents to provide a

clear cross-reference in the section describing eligibility to convert the group life

insurance conversion into an individual policy to the section on continuing life

insurance benefits if Disabled under the Welfare Plan.

124.   That CIGNA Certificate failed to do so.

125.   Section 2520.102-2(b) of the regulation states that the format of the

summary plan description must not have the effect of misleading, misinforming, or

failing to inform participants and beneficiaries.

126.   By burying the notice that Scholastic would provide information on

the available benefit options and their costs when a participant became eligible for

long term disability benefits, in a single sentence on page 33 of the 75 Page Guide

35

to Understanding the Welfare Plan, Scholastic provided an SPD which had the effect of failing to inform participants of their right to convert their life insurance coverage under the CIGNA group policy into an individual policy.

127.   By providing two separate documents and labeling each as a Summary Plan Description for the employee life insurance benefit under the Welfare Plan, and requiring participants to parse through both documents and correlate provisions which concerned the right to convert group life coverage into an individual policy and the notice provisions that Scholastic represented would be provided with respect to exercising the right of conversion, Scholastic violated ERISA section 102, 29 U.S.C. § 1022.

128.   By failing to provide Gaye Masnjak with a copy of the CIGNA Certificate of Coverage that applied to her in her demoted position of Director, Special Projects, on her return to work in November, 2024, Scholastic violated ERISA section 102, 29 U.S.C. § 1022.

## THIRD  CLAIM FOR RELIEF
ERISA section 502(c), 29 U.S.C. § 1132(c)

129.   Paragraphs 1-128 are incorporated by reference as if fully set forth herein.

130.   ERISA section 502(c)(1), 29 U.S.C. § 1132(c)(1), authorizes a court to impose a penalty of up to $110/day upon a plan administrator who fails to provide, within 30 days, documents which it is required to provide to a participant or beneficiary under Title I of ERISA.

131.   Scholastic has had ready access to the CIGNA insurance policy FLY-980010,which it was required to provide to a beneficiary of Gaye Masnjak upon written request.  It is a document or instrument under which the life insurance component of the Welfare Plan was established or operated.  Scholastic had no legitimate reason for not providing the document upon receiving the written request for the document on January 5, 2026.

132.   Scholastic also had ready access to Gaye Masnjak's benefit file under the Welfare Plan, which would contain information relevant to her eligibility for life insurance benefits under the Plan, which would be  documents under which the plan was operated.

133.   Plaintiffs request the Court to impose the maximum penalty

authorized by law upon Scholastic for trying to hide the policy and information relevant to Gaye Masnjak's claims in this action.

## FOURTH CLAIM FOR RELIEF
**Claim for Appropriate Equitable Relief**

ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3)

134.   Paragraphs 1-133 are incorporated by reference as if fully set forth herein.

135.   ERISA section 502(a)(3), 29 U.S.C. § 1132 (a)(3)**,** provides that a beneficiary may bring a civil action (A) to enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the Plan or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provision of Title I of ERISA or the terms of the Plan.

136.   In *Sullivan-Mestecky v. Verizon Communications, Inc.*, 961 F.3d 91, 100-01 (2d Cir. 2020), the Court "recognized a plaintiff's non-procurement of alternative coverage as a loss resulting from a fiduciary's material misrepresentation of the plaintiff's extent of or eligibility for coverage." *Sullivan-Mestecky*, at 103 n.44.  The Court there also recognized promissory estoppel, surcharge and reformation could be appropriate equitable remedies for a

fiduciary's breach of duty. *Sullivan-Mestecky*, at 100-104.

137. The beneficiaries are entitled to have Scholastic estopped from denying that Gaye Masnjak would have converted her coverage as a Vice President under the group policy into an individual policy in the same amount when she was eligible to do so because Scholastic:

a)    failed to provide actual, timely, written legally adequate disclosure of her right to convert her coverage under the group policy into an individual policy with the same amount of coverage;

b)    failed to included her right to convert and the cost when it detailed her other benefit options in April, 2024 when she became eligible to receive long term disability benefits; and

c)    repeatedly failed to comply with its fiduciary obligations under ERISA to act in accordance with the documents and instruments governing the Plan.

138. The beneficiaries are entitled to have Scholastic estopped from denying that Gaye Masnjak would have elected additional voluntary life insurance coverage in the amount of $300,000 that she had a right to elect as a guaranteed issue under the CIGNA group life insurance policy that applied to her when she returned to work in November, 2024, because Scholastic:

a)    did not disclose to her that her life insurance coverage had been reduced from $714,000 to $300,000;

b)    did not disclose to her that she had that right under the Certificate of Group coverage that applied to her when she returned to work;

c)    did not provide her with a copy of the CIGNA Group Life Insurance Certificate that, on information and belief, applied to her in her demoted position of Director, Special Projects when she returned to work in November, 2024.

139.   Scholastic should be surcharged for the amount of insurance coverage that Gaye Masnjak lost when she did not convert her coverage as a Vice President under the group policy into an individual policy–approximately $714,000--arising out of Scholastic's breach of fiduciary duty.

140.   Scholastic should be surcharged for the amount of life insurance coverage in an individual policy–approximately $ 414,000- that Gaye Masnjak could have converted her coverage as a Vice President into when she was demoted on her return to work in November, 2025, arising out of Scholastic's breach of fiduciary duty and failure to disclose that her life insurance coverage had been reduced to $300,000.

139.   Scholastic should be surcharged for the amount of additional

voluntary coverage - $300,000 -that Gaye Masnjak could have elected under the CIGNA Group Life Insurance Certificate that, on information and belief, applied to her in her demoted position of Director, Special Projects, for Scholastic's failure to disclose the reduced amount of life insurance coverage that she was eligible for upon her return to work in November, 2024.

## PRAYER FOR RELIEF

Wherefore Plaintiffs pray that the Court:

1.      Declare that Scholastic has breached the duties, obligations and responsibilities imposed on it by ERISA and by the terms of the CIGNA group life insurance policy, as represented in the CIGNA Group Life Insurance Certificate, and in the Welfare Plan;

2.      Order Scholastic to pay plaintiffs, as beneficiaries of Gaye Masnjak under the Welfare Plan, the amount of the money that individual policy coverage (approximately $714,000) would have provided them had Gaye Masnjak converted her group coverage under the CIGNA policy into an individual policy while receiving disability benefits under the Plan.

If the Court were to conclude that the beneficiaries are not entitled to that approximately $714,000, then Order Scholastic to pay plaintiff beneficiaries

the amount of money - approximately $414,000-of the individual coverage that Gaye Masnjak could have converted her coverage as a Vice President into, under the CIGNA Policy, as described in the CIGNA Life Insurance Certificate that was applicable to Gaye Masnjak as a Vice President, just before she was demoted in the fall of 2024 and returned to work.

If the Court were to conclude that the beneficiaries are not entitled to the $714,000 or the $414,000, then Order Scholastic to pay the plaintiff beneficiaries the amount of money - approximately $300,000 - that Gaye Masnjak could have elected as voluntary coverage under the CIGNA Policy, as described in the CIGNA Group Life Insurance Certificate that, on information and belief, applied to her when she returned to work in November, 2024 in her demoted position as Director, Special Projects.

3. Order defendant Scholastic to pay Plaintiffs, in the Court's discretion, a penalty of up to $110/day for each day from February 5, 2026 to August 10, 2026, that they failed to provide them with a copy of the CIGNA life insurance policy, an instrument under which at all relevant times, the Welfare Plan was operated and maintained, and under which Gaye Masnjak was insured during 2023 and 2024.

Order defendant Scholastic to pay plaintiffs, in the Court's discretion,

a penalty of up to $110/day for each day since February 5, 2026, until it provides

copies of all documents in Gaye Masnjak's benefit file relevant to her eligibility

for life insurance benefits under the welfare plan, under which the life insurance

component of the welfare plan has been operated or maintained.

4.    Order defendant Scholastic to pay plaintiffs the costs of suit herein,

and a reasonable attorney's fee, pursuant to ERISA section 502(g)(1), 29 U.S.C. §

1132(g)(1), and under any other applicable law.

5.    Grant such other and further relief as the Court deems appropriate,

just and proper.

Dated:    August 11, 2026

                                        Respectfully submitted,


                                        _____S/_____
                                        Robert L. Liebross (Bar # RL8766)
                                        LAW OFFICE OF ROBERT L. LIEBROSS

                                        25927 148th Drive
                                        Rosedale, NY 11422
                                        212-566-2151
                                        rliebross@liebrosslaw.com

                                        Attorney for Plaintiffs